Meza v. Wilkinson Ms. Rivera Ms. Rivera, you're muted. Can you hear me now? Yes. Okay. I'm sorry, Your Honor. Good morning, Your Honors. May I please the court? My name is Brittany Rivera. I represent the petitioner Sergio Meza in this matter. I'm going to be speaking about three issues we face today. First, the issue of jurisdiction. Second, the mischaracterization of Mr. Meza's testimony as it relates to good moral character. And lastly, the failure of the IJ and Board of Immigration Appeals to review probative and important evidence as it relates to extreme hardship. I would like to begin by addressing jurisdiction in this case. This court has the necessary jurisdiction to review the denial of the immigration judge on the Board of Immigration Appeals. As recently as this month, this court held in Martinez-Baez that the Court of Appeals can, in fact, review mixed questions of law and fact. I hate to do this, but let me just correct and say we took note of the fact that the Supreme Court has a decision which seems to have broadened that but did not find it necessary to apply Guerrero-Las Brillas in Martinez-Baez itself. And we specifically said we're sticking with our old framework. So certainly if you want to talk about the Supreme Court's decision in Guerrero-Las Brillas, please do because we are bound by it. But it really doesn't get you too far from Martinez-Baez. Yes, Your Honor. So Guerrero-Las Brillas basically opened up the possibilities of the Court of Appeals to review discretionary decisions such as the one we are going to be speaking about today. I must say that's not my reading of that case. It said that the application of legal principles to undisputed facts can indeed be a question of law. Not that it always is a question of law, even if the only dispute is how to apply discretion. That's what leads to my principal question here, which is what rule of law did the immigration officials transgress by holding that Mesa is not of good moral character? Could you articulate the rule of law and then maybe we can use the Supreme Court's framework to see whether it's implicated? Sure, Your Honor. There are actually two legal errors in this case. The first one that I was going to discuss is relating to good moral character, as you just mentioned. We stated in our brief that the immigration judge looked at the incorrect statutory period for good moral character. The law clearly states that the adjudicator looking at good moral character must look at 10 years preceding the date of decision when analyzing good moral character. The immigration judge did not use that standard. She actually looked at Mr. Mesa's criminal record as a whole. On appeal, the board attempted to cure that error, but they failed to completely do so. The board simply stated that the wrong standard was used but did not address how that mistake by the immigration judge may have tainted her view of Mr. Mesa's case or may have affected her decision. She was looking at the wrong time period and further analysis must have been made at that point by the Board of Immigration Appeals, which it wasn't. This was also a concern that was mentioned in Martina's bias that the BIA should have some sort of judicial review if, in fact, there was no application of the law to the facts. It doesn't seem like that exactly happened here on appeal when the BIA was analyzing the good moral character issue. A more in-depth analysis was needed since the IG used a broader period of time. There were rehabilitation efforts by the petitioner mentioned as well as positive equities that went unnoticed by the immigration judge in her analysis. Her analysis, in summary, was faulty because she used the wrong standard and the BIA should have reanalyzed. Can I ask you a question about that? You mentioned the 10-year, the immigration judge used the incorrect statutory period, but the way I read it, didn't the immigration judge refer to the fact that Mr. Mesa used a fake Social Security number to obtain work from 2003 to 2015? I believe so, Your Honor. Which is outside the 10-year period? Correct, Your Honor. Is that the basis for your argument that the immigration judge used the incorrect statutory period? It's part of it, Your Honor. However, the immigration judge, if I'm remembering correctly, also referred to some arrests that the petitioner had for marijuana and for certain traffic stops that he had outside of the statutory period. So, it was acknowledged by the Board of Immigration Appeals that the judge did use that incorrect statutory period when she was looking at Mr. Mesa's good moral character. One of the issues she raised was the false use of a Social Security number that was not his. If I can move on to my second issue, Judge, or do you have any more questions on the good moral character? Well, I have one other question for you. In your reply brief, your argument is that the rule of law implemented here was that the BIA failed to follow its own precedent. And you argue that that's on page 9, I guess, of your brief. Well, no, it's not. There's no page number, so it's hard for me. It says the BIA failed to follow its own precedent. As such, the analysis of good moral character was incorrect. What BIA precedent did the IJ or the Board of Immigration Appeals fail to follow? Yes, Your Honor. So I do recall stating that in my reply brief. And there is precedent by this court even that states that the BIA is not required to write an exegesis on every contention, but they do need to address issues raised. And the issue was raised on appeal that the wrong time period was used by the immigration judge. It's a legal error. It's reviewable by this court. And the Board of Immigration Appeals didn't completely cure that legal error. Therefore, that's what our argument is in the realm of good moral character. I'd like to move on to my second point just because I'm running out of time, Your Honors. And that is the extreme hardship analysis by the IJ and the BIA. Ms. Rivera, let me quickly say the Board was content to stop with good moral character. I'm not sure that there is anything to say about the extreme hardship unless we were to agree with you on good moral character. If we did, then the government has argued the only proper thing to do would be to send this back to the Board to give them the first shot at hardship because we don't make these decisions. We review them. You're correct, Judge Wood. The BIA did stop at good moral character because the law states if one of the four requirements is not met, then the person does not qualify. However, this case is a little bit different because there is a legal error that occurred in that extreme hardship analysis. And I do mention that in my brief that there were six qualifying relatives at the time of the curing. I understand your merits arguments. I just don't know how we get across the bridge even to be talking about the extreme hardship unless – I mean, certainly if you're making an argument, I hope you agree with me on good moral character. And I realize there's going to be more to say on hardship, and so it's not a frivolous remand to the Board or something. But there's very little that would properly be before this Court on the alternative ground because he's got to win on everything in order to be able to stay. Yes, Your Honor. We believe that there was a legal error with the good moral character, so that would be enough for the remand, in addition to the legal error that was committed with the extreme hardship analysis. As I was stating before, there's six qualifying relatives in this case. Now there's seven because an additional child was born. When you look at the IJ's decision on its face, it's faulty. The heading even reads, Respondent has not demonstrated that his children will suffer hardship. There's no mention of Mr. Mase's parents, which are two of the qualifying relatives. There's no analysis of the parents' hardship that they may suffer. And when this was addressed on appeal by previous counsel, the BIA did not address it because they found that there was no good moral character and they ended up moving on to denying or dismissing the appeal. However, that's a legal error that this Court can review. And as stated before, the BIA doesn't have to write an exegesis on every single contention, but that was a legal error that was raised on appeal and it was not addressed at all. And those are two qualifying relatives that would suffer if this person was removed from the United States. And we do think that that's something that wasn't the dots weren't connected in the case, kind of how it was spoken about in Martina's bias. It was not dots connected. They weren't looking at the circumstances, totality and the totality of the circumstances. And it's clear that there were legal errors on both fronts. I see I'm running out of time, so I would preserve the rest of my time for my rebuttal. Thank you. You have three seconds. Mr. Hogan. Good morning. May it please the Court. As the panel has already noted and discussed, unfortunately for the petitioner in this case, it can't reach the hardship determination. The board didn't affirm it. And under I.S. They didn't have to. There's four dispositive factors and the petitioner had to satisfy all four. So good moral character termination alone. Argument that the board is true that the immigration judge look beyond the 10 year period. And that is an error. But again, unfortunately for the petitioner, the board clarified that they quite stated in their decision that they were looking only at the 10 years preceding the board. And then they go on to discuss the criminal behavior from 2010 to 2020. It's within the 10 year period. The immigration judge. I was going to ask you if you conceded that. But can you tell me where in the immigration judge's findings that the immigration judge committed that error? Because the way I read the decision of the immigration judge, she clearly summarizes the evidence of the respondents testimony. And she summarizes the testimony of the respondents wife. And then in less than a page, she says the respondent is not established that he's a person of good moral character. And on the second second page, page seven of her opinion. She she here refers directly to during the 10 year that during the 10 year during the 10 year period. And then in the next paragraph, she summarizes why she's concerned that he doesn't have good moral character. So during the 10 year period. So what am I missing that she goes beyond the 10 year period in considering his criminal history and concluding that he doesn't have good moral character? Well, it appears that the board's concern was that she talks the way that the immigration judge's decision is structured. It does look like she looked beyond the 10 year period. But again, that doesn't it's not fatal to the agency's decision of this case, because the board clarified the correct standard and applied the correct standard. And only twice on pages four and five of the record state, we are only looking at the 10 year period preceding our decision. And then they proceed to discuss why all of the arrests and convictions in this case show he has no good moral character. Unfortunately for the petitioner from 2010 to 2015, which goes beyond the initiation of removal proceedings, he was using a fabricated social security number within months of being put in proceedings. He was arrested for driving while intoxicated, where he admitted he stayed up all night drinking, drove in the morning to meet a friend, had several shots and several beers and then caused a pretty serious accident on the way home where he admitted his blood alcohol level was twice the legal limit. And while the IJ acknowledged that he had gone to rehabilitation classes, unfortunately for the petitioner, after completing those classes, he ignored a requirement to put an interlock device on his car and violated his probation. So all of those together on all of his cars, let's say he said that he was that I guess the family had gone to someplace and his wife wasn't well. And so he was driving back with no interlock device. Yes, ma'am. Yes, Your Honor. The immigration judge was a little inartful on that point and saying he didn't put the device on his car. But at page 377 of the record, the petitioner was very clear that he understood that he wasn't supposed to drive any car without an interlock device. I totally take the point. It's just that he was saying, in a sense, there were some extenuating circumstances that the family wound up at the park. His wife had grown over, driven over. She was sick. Somebody had to get them back. And he said he was the one who did it. Now, he shouldn't have. He wasn't supposed to be driving without an interlock device. Clearly. Yes, Your Honor. Does the panel have any further questions? It does not look like it. The government respectfully rests on its brief. Thank you, Mr. Hogan. Ms. Rivera, I am going to increase your rebuttal time by an entire order of magnitude. You have 30 seconds. Thank you, Your Honor. I just wanted to wrap up my previous arguments. There, you know, Mr. Hogan brings up true points that, you know, the petitioner was driving without an interlock device. He did receive a DUI after he was let go from his proceedings on bond. But this court doesn't have to look at the facts of the case. The fact of the matter is that there's two legal errors that occurred as it relates to good moral character and hardships.  Thank you for your time. Thank you very much. The case is taken under advisement.